IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   22-cr-00113-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    DEBRA CAMPBELL,

    Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

The United States of America hereby files the Government's Sentencing Statement.

The correct Total Offense Level in this case is 21 with a corresponding guideline range of 37-46 months of imprisonment.   The government recommends a sentence of 37 months in prison, 3 years of supervised release, restitution in the total amount of $410,889 to be apportioned as described in the parties' Stipulation Re Restitution at Docket No. 17 and in the Presentence Report, and a mandatory special assessment of $200.   Due to the large amount of restitution and the defendant's financial circumstances, no fine is recommended.   This recommended sentence best serves the sentencing goals set forth under 18 U.S.C. § 3553(a).

## Wire Fraud

As set forth in the plea agreement, from 2009 through April 2018, defendant Campbell owned and operated a company called A Better Alternative Management (ABAM) in Grand Junction, Colorado. [Doc. # 10 at pg. 8]. ABAM was hired by Homeowners Associations (HOAs) to manage their finances for a monthly fee of between $150 and $750, depending on the level of service that the HOAs requested. [*Id.* at 8-9]. Between early 2015 and April 2018, ABAM managed approximately 59 to 70 HOAs. [*Id.*]. As a result of these management relationships, Campbell had access to, and signatory authority for, the HOAs' bank accounts. [*Id.*]. Campbell collected and deposited payments from HOA members and paid administrative expenses on behalf of the HOAs. [*Id.*]. Through these management relationships, Campbell became aware of which HOA boards did not monitor their HOA's bank account and finances. [*Id.*].

In approximately 2015, Campbell obtained Payday loans for personal expenses and had trouble making the repayments. [*Id.*]. In order keep up with her loan payments, starting in March 2015, Campbell began making unauthorized transfers to ABAM's bank accounts from some of the HOAs' bank accounts and used that money for her personal expenses, including repaying her loan. [*Id.*]. Campbell selected HOAs whose boards did not monitor their HOA's bank account or finances. [*Id.*]. Initially, Campbell told herself that she intended to repay the money. [*Id.*]. But when

Campbell realized that no one noticed the money missing from the HOA accounts, she did not repay the money and continued to steal more and more money. [*Id.*].

In order conceal and perpetuate her theft, Campbell regularly altered the HOAs' bank statements so they did not reflect the unauthorized transfers and falsely reflected a higher balance than actually existed in the account. [*Id.*]. Campbell provided these altered and false bank statements to the HOAs to support the false account reconciliations that she created and provided to the HOAs as part of her services. [*Id.*]. Campbell provided these false records to the HOAs with the intent to deceive them regarding the number of payments that had been made from their accounts and what their account balances were. [*Id.*]. In this manner, between March 2015 and April 2018, Campbell stole more than $250,000 from her client HOAs. [*Id.* at 9-10].

Prior to April 2018, the Division of Real Estate of the Department of Regulatory Agencies in Colorado began investigating Campbell's misappropriation of client funds. [*Id.* at 10]. On April 17, 2018, Campbell signed Stipulation Order (2017-2103) in which she admitted to violations of community association manager licensing laws/rules, including converting/diverting the funds of others. [*Id.*]. As a result of this Stipulation Order, Campbell's community association manager license was permanently revoked effective May 1, 2018, and Campbell began closing down ABAM. [*Id.*].

Despite having already signed the Stipulation Order, when Campbell was confronted by an HOA board member on April 20, 2018, Campbell lied and made another unauthorized transfer to cover up her embezzlement. [*Id.*]. Specifically, on

3

April 20, 2018, R.B., an HOA board member, went to Alpine Bank with the HOA's treasurer to obtain access to the HOA's bank account.  [*Id.*].  A bank employee advised R.B. that the HOA's bank account had been closed in 2017.  [*Id.*].  R.B. was alarmed because he had expected the bank account to have a balance of approximately $55,000.  [*Id.*].  R.B. and the treasurer went to ABAM's offices and confronted Campbell.  [*Id.*].  Campbell falsely reassured them that she would access the bank account and see what was going on.  [*Id.*].  About ten minutes later, Campbell told them everything was fine and provided them with what she represented was a printout of the account showing a balance of $55,674.99.  [*Id.*].  In fact, Campbell transferred $55,674.99 from another HOA's bank account to falsely make it appear as though R.B.'s HOA's bank account had not been closed.  [*Id.*].  In turn, Campbell then falsely told the HOA from which she had taken the $55,674.99 that the IRS had taken the money. [*Id.*].

     Campbell knew that her fraud scheme was easier both to commit and conceal because the HOAs she targeted trusted her and did not supervise her in her role of managing their finances and bank accounts.  [*Id.* at 11].  Through her scheme, Campbell stole money from approximately 23 HOAs.  [*Id.*].

### Subscribing to a False Tax Return

     Because Campbell and her husband had prior outstanding tax obligations, Campbell put ABAM in the names of her children so that the IRS would not levy her income, but Campbell had exclusive control of ABAM and ABAM's income was income

to Campbell.  [*Id*.].  To hide her income from the IRS, Campbell paid her personal expenses out of ABAM's bank account rather than taking a salary.  [*Id*.].

Campbell used Turbo Tax to personally prepare Partnership Returns (Forms 1065) for ABAM for the tax years 2014-2016, which she had her daughter sign.  [*Id*.]. On those Forms 1065 for tax years 2014-2016, Campbell failed to include in ABAM's gross receipts all of the money ABAM earned through legitimate fees or any of the money that Campbell had embezzled from the HOAs.  [*Id*.].

On May 1, 2018, Campbell met with an IRS Revenue Agent who was performing an audit pertaining to Campbell and her husband.  [*Id.* at 12].  The IRS Revenue Agent showed Campbell a summary of bank deposits for 2015-2016 that showed that ABAM's Forms 1065 for those years underreported gross receipts by at least $250,000.  [*Id*.].

On July 3, 2018, Grand Junction Police Detective Knowles interviewed Campbell about her embezzlement, and Campbell said: "I am also in trouble with the IRS, just so you know… this is how dumb I am… I didn't, I wasn't thinking that was income on my taxes.  I would put all my 1099s but not all that money that was in my account."  [*Id*.]. Detective Knowles and Campbell further discussed that Campbell was obligated to report and pay taxes on money that she stole from the HOAs.  [*Id*.].

On August 14, 2018, an IRS Revenue Officer asked Campbell to file Individual Income Tax Returns (Forms 1040) for the tax years 2012-2017, which had not previously been filed.  [*Id*.].

pg 6 of 8

On September 19, 2018, Campbell and her husband filed with the IRS joint United States Individual Income Tax Returns (Forms 1040) for the tax years 2014-2017, on which Campbell willfully did not include either her legitimate income from ABAM's HOA management business or the income from her embezzlement. [*Id.*]. Instead, each of these Forms 1040 included a Schedule C purportedly for income derived from ABAM, but the Schedule C described ABAM as her husband's construction business and only included income earned by Campbell's husband through his work as a construction contractor. [*Id.*]. Campbell signed and filed these returns knowing that they substantially underreported her taxable income and knowing that she had a legal obligation to report and pay taxes on all of her taxable income. [*Id.* at 12-13].

The parties have stipulated that the Court should order restitution to the IRS in the amount of $53,079.58. [Doc. # 17 at 2]. But the loss resulting from Campbell's false statements on her 2014-2017 tax returns is $158,820. [Doc. # 10 at 14]. This is the loss figure that the Court should consider for all sentencing purposes other than restitution.

Campbell's wire fraud scheme spanned more than three years. It was not a one-time mistake that was immediately regretted. She also used the knowledge gained from her position of trust with her HOA clients to select her targets based on which HOA boards did not monitor their bank account or finances. Even after she knew that her conduct had been discovered by the Division of Real Estate of the Department of Regulatory Agencies in Colorado, Campbell continued to lie to HOA

clients and made an unauthorized transfer in an attempt to cover up her embezzlement. Likewise, her tax crimes implicate years of relevant and willful conduct that led up to her subscribing to the false tax returns at issue in this case.

    The Court should focus on the facts of this case while applying the sentencing factors under Section 3553.   Because of the seriousness of the defendant's crimes, the need to promote respect for the law and provide just punishment, and the need for general and specific deterrence, the government requests that the Court impose a sentence that includes 37 months of imprisonment.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  s/ *Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
United States Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Pegeen.Rhyne@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

s/ *Amy McDaniel*
Amy McDaniel
Legal Assistant
U.S. Attorney's Office