IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     22-cr-00113-CMA-GPG

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DEBRA CAMPBELL,

        Defendant.

_____

**MOTION FOR NON-GUIDELINE SENTENCE
AND SENTENCING STATEMENT**
_____

Ms. Debra Campbell, by and through her attorney Mary V. Butterton, respectfully submits this sentencing statement in support of her sentencing request of three years of probation, to include a condition of at least six months of home confinement, and restitution. The requested sentence is lower than that suggested by the advisory Sentencing Guidelines as promulgated by the Sentencing Commission, but is commensurate with the statutory factors of 18 U.S.C. § 3553(a).

**Procedural Posture**

Ms. Campbell has been convicted of two financial fraud-related offenses, Wire Fraud (a violation of 18 U.S.C. 1343) and Subscribing to a False Tax Return (26 U.S.C. §7206(1)). These offenses are based on conduct that occurred in 2018 and some years prior; the matter then sat dormant until a target letter was sent to Ms. Campbell in January 2022. Undersigned counsel was appointed before charges were filed, and Ms. Campbell quickly agreed to waive indictment. An Information was filed in April 2022, and Ms. Campbell entered a plea of guilty in June 2022. Docs.

1, 9. Ms. Campbell has been on pretrial release for the life of this case with no incidents or issues reported.

## Nature and Circumstances of Offense

The Presentence Report (Doc. 18) provides an accurate outline of the conduct in this case. Ms. Campbell previously owned and operated a small business that managed the finances of local homeowner's associations (HOAs) in Mesa County, Colorado. Facing dire personal financial circumstances due to her husband's tax and business debt, she took out high-interest payday loans that she could not repay. She began transferring money out of HOA accounts to pay her own bills and support her kids, telling herself she would repay the money; but, as with many ill-advised short-term financial band-aids, the situation spiraled and Ms. Campbell kept transferring money to cover her own debts. When HOAs would approach her about account statements, she would transfer money around or falsify the account balance; by mid-2018, when one HOA discovered the discrepancy between Ms. Campbell's reporting and their bank balances, everything came crashing down. Later, when filing her own federal income taxes, she did not include her ill-gotten gains nor her full income on her tax return.

Ms. Campbell was interviewed by Grand Junction local law enforcement in June 2018 and immediately admitted to taking the funds. Calling herself "unworthy and incompetent," Ms. Campbell cried and kept saying that she "screwed up," and "wouldn't want to fight it." She said she had planned to sell her business to pay back the HOAs but found no interested buyers. That interview concluded without an arrest; a few days later, she called the Grand Junction police back, saying she had received advice not to talk to the police but she wanted to accept responsibility. She again interviewed with that agency in July 2018.

From there, nothing happened for a long time. Ms. Campbell was interviewed by an IRS agent in February 2019, but after that the investigation seemed dormant, from Ms. Campbell's perspective, for literally years. During that time period she spiraled into a deep depression. She stopped working and lived off of Social Security. She stopped leaving her house unless she absolutely had to, out of fear and shame of running into a person from her former HOA business. She lived in constant anxiety that any given moment might be the day law enforcement would come to her door to drag her to jail. She gained weight and her health, already strained, significantly worsened. This went on for three years, until she received a target letter in January 2022. Now, in a strange way, the procedure of this case has been a relief. Ms. Campbell has had this matter hanging over her head for years, all the while willing to accept responsibility and wanting to make things right.

## History and Characteristics of Ms. Campbell

The conduct in this case is a stain on an otherwise law-abiding long life. Debbie Campbell was born in Utah and grew up on the Western Slope. She was much younger than her siblings and was married by age 19. Her first husband was physically and emotionally abusive, frequently berating her for being "fat" and "ugly." She has two children from that marriage, both now adults.

Ms. Campbell's children are the center of her world. When her daughter Sara's husband left Sara and her children, Ms. Campbell supported them financially. When Ms. Campbell's son Brent had run-ins with the law, she bailed him out, took care of his children, and helped him with bills. But in her efforts to be a supportive mother, she made poor financial decisions, and by 2015,

was deeply in debt. These debts, paired with her husband's large tax and business liabilities, were the motivating factor behind the theft in the instant case.

Now, at age 66, Ms. Campbell is facing her first and only criminal conviction. She lives with her mother-in-law, who is in her 90s, and husband in a small house in Grand Junction. She is in very poor health, suffering from Diastolic Heart Failure that requires her to wear an oxygen tank daily. In the past year, she has also had water in her legs that has led to frequent large, oozing sores. Most recently, she fell and cracked two vertebrae in her tailbone and now struggles to walk. These physical ailments are on top of the extreme depression and anxiety – ailments that contribute to Ms. Campbell's near-agoraphobia. Ms. Campbell spends her days in her house, caring for her mother-in-law; she has no friends, no employment, and leaves the house rarely, usually only to go to the doctor.

## Probation is the appropriate sentence here.

This Court should impose a sentence of probation with a condition of home confinement. This request is not based solely on the nature and characteristics of this offense, which are non-violent in nature and at this point, fairly remote. This request is made because probation is appropriate for this defendant under these circumstances. When fashioning a sentence, this Court must consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford deterrence to criminal conduct;
> (C) to protect the public from future crimes of the defendant; and
> (D) to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The Government, in its sentencing statement, cites the first two factors as reasons to impose an incarcerative sentence ("[b]ecause of the seriousness of the defendant's crimes, the need to promote respect for the law and provide just punishment, and the need for general and specific deterrence, the government requests that the Court impose a sentence that includes 37 months of imprisonment." Doc. 21 at 7). But while punishment *may* be a reason to support incarceration, the other factors cited support probation.

Why, precisely, is 37 months in prison necessary, for this elderly defendant in this non-violent case, to promote respect for the law or to punish? Ms. Campbell has cooperated with investigators from the beginning of this case, and has all but begged to proceed with consequences. Instead, she waited for three anxious years with no answers. That delay, while certainly not the same as incarceration, caused incredible anxiety and distress to a woman who was ready to plead guilty from her first conversation with police. And, while a prison sentence may have some effect on general deterrence, certainly the imposition of hefty restitution and tax fines – fines that are outside of what the IRS will almost certainly seek in the civil context – are deterrence enough.

But more importantly, the Government completely ignores the final two sentencing factors of protecting the public and providing needed correctional treatment – probably because those factors stand starkly in support of a sentence of probation. Ms. Campbell is no danger. She can barely walk, much less harm anyone, and she no longer has the access to others' accounts to be any sort of financial danger. And as the Court is required to consider access to medical care, an incarcerative sentence becomes near-cruel. Ms. Campbell needs frequent medical care for chronic cardiovascular condition, but as the past several years of the COVID-19 pandemic has demonstrated, the Bureau of Prisons (BOP) is ill-equipped to handle even basic medical needs. In

fact, the BOP doesn't even meet its own standards for quality of medical care,[1] much less care for a 66-year-old woman with major cardiac issues who requires on-hand oxygen.

For these reasons, a sentence of incarceration will be much more difficult for Ms. Campbell than it would for the average defendant. In some cases, the hardship of prison for an ill person may be outweighed by the need to penalize egregious conduct; here, however, we have a first-time offender who committed a non-violent financial crime against organizations formed for neighborhood upkeep. This is not a case where justice requires the heavy hammer of punishment. Rather, the instruction of the law to impose a sentence that is the lowest possible to achieve respect for the law, deterrence, protection of the public, and treatment supports a sentence with harsh restrictions short of incarceration.

## Conclusion

For the reasons outlined above, this Court should impose on Ms. Campbell a sentence of 3 years of probation, to include at least six months of home confinement. This outcome is just for this woman and this case, and is sufficient to meet the statutory sentencing goals.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ Mary V. Butterton
MARY V. BUTTERTON
Assistant Federal Public Defender

---

[1] Pavlo, Walter, *Federal Bureau of Prisons' Medical Care Falls Short Of Its Own Policy,* Forbes.com, April 19, 2022, accessible at https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=41b66f355eab (last accessed 10/3/2022).

        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        Mary_Butterton@fd.org
        Attorney for Defendant

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 19, 2022, I filed the foregoing with the Clerk of Court via email and copied the following email addresses:

  Pegeen Rhyne, Assistant United States Attorney
  Email: pegeen.rhyne@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

  Debra Campbell (via U.S. Mail)

          s/ Mary V. Butterton
          MARY V. BUTTERTON
          Assistant Federal Public Defender
          633 17th Street, Suite 1000
          Denver, CO  80202
          Telephone:  (303) 294-7002
          FAX:  (303) 294-1192
          Mary_Butterton@fd.org
          Attorney for Defendant